[No. 28945. Department One. April 7, 1943.]

INEZ H. MILLER, as *Executrix, Respondent,* v. JAMES B. HEYES et al., *Appellants.*[1]

[1] Reported in 136 P. (2d) 157.

468

*Guy E. Dunning*, for appellants.

*D. R. Hoppe* and *Jas. A. Dougan*, for respondent.

JEFFERS, J.—This is an appeal by defendants James B. Heyes and wife from a judgment made and entered on July 18, 1942, wherein plaintiff, Inez H. Miller, as executrix of the will of Susie E. Keesee, deceased, was awarded a judgment against James B. Heyes individually, and against the community composed of defendants, in the sum of $1,439.38.

The original complaint in this action alleged in substance that, on April 15, 1935, Susie E. Frasier (later Keesee) and James B. Heyes entered into a written contract, a copy of which is attached to and made a part of the complaint. This contract was admitted in evidence, and provides as follows:

"THIS INDENTURE entered into this 15 day of April, 1935, between SUSIE E. FRASIER, hereinafter referred to as party of the first part, and JAMES B. HEYES, hereinafter referred to as party of the second part, WITNES-SETH:

"Whereas the party of the first part is now conducting a chiropodist business in the Arcade Building, Seattle, Washington, as the sole owner thereof, which the party of the first part hereby warrants to be free and clear of all debts and obligations of every kind, and whereas the parties hereto desire to engage in said business as copartners, it is mutually agreed between the parties hereto as follows:

"The party of the first part hereby sells and transfers to the party of the second part a one-half interest in said business, including good will, office furniture, and all other property and assets thereof of every kind or description except the instruments of the party of the first part.

"The parties hereto shall, from the date hereof, be copartners in the future conduct of said business and shall share the profits and losses thereof equally.

"Each of the parties hereto shall devote all of his or her time to the conduct of said business without compensation other than the right to one-half of the net profits of said business.

"All receipts shall be deposited in a bank of the City of Seattle mutually satisfactory to the parties hereto and all disbursements shall be made by checks to be signed as may be mutually agreed upon.

"A complete set of books of account shall be maintained at all times in a manner mutually agreeable to the parties hereto.

"On the first day of each month, the receipts for the preceding month less the disbursements for the preceding month shall be divided equally between the parties hereto.

"If either party hereto shall for a period of one year be incapacitated from illness from devoting substantially all of his or her time to the business of said partnership, the partner so incapacitated shall, notwithstanding such incapacity, receive his or her share of the net profits of such business for such period of incapacity, but, at the end of that period of one year, the entire partnership business including good will and all other assets thereof of every kind and description shall be the property of the partner not so incapacitated, free

of any claim whatsoever on the part of the partner so incapacitated, provided that the party of the second part shall not have the benefit of this paragraph relating to incapacity unless and until he shall have fully paid the sum of $2000.00 to the party of the first part as is hereinafter provided.

"The party of the second part shall pay to the party of the first part the sum of Two Thousand Dollars ($2000.00), One Thousand Dollars ($1000.00) of which shall be paid upon the execution of this agreement, the receipt of which is hereby acknowledged by the party of the first part, and the remaining One Thousand Dollars ($1000.00) shall be paid by the party of the second part to the party of the first part within six months from the date of this agreement.

"If this partnership be dissolved within one year from the date hereof, the party of the first part shall repay to the party of the second part the sum of Two Thousand Dollars ($2000.00), or so much thereof as has been paid by the party of the second part pursuant to this agreement. If this partnership be dissolved subsequent to one year from the date hereof and prior to two years from the date hereof, the party of the first part shall repay to the party of the second part One Thousand Dollars ($1000.00). In the event of a dissolution of said partnership within two years from the date hereof, the party of the first part shall not either directly or indirectly, as principal, employee or otherwise, engage in the chiropody business in the City of Seattle, Washington until she shall have repaid the party of the second part the sum of money that the party of the second part is entitled to receive, as is hereinbefore provided.

"Neither of the parties hereto shall have the right to sell or otherwise transfer his or her partnership interest in said partnership business to any third person without the consent of the other partner.

"All instruments of the party of the second part and all equipment and other property of every kind and description which the party of the second part shall bring into the partnership shall at all times continue to be his individual property.

"Neither partner shall incur any liability except usual and current operating expense, without the consent of the other partner.

"IN WITNESS WHEREOF the parties hereto have hereunto affixed their hands and seals the day and year first above written.           SUSIE E. FRASIER
                                        "JAMES B. HEYES"

It was alleged that, according to the contract, it was agreed that the parties thereto would enter into a partnership agreement covering the conduct and carrying on of a chiropody business, which prior to that time had been carried on by Susie E. Frasier, providing for a division of the profits, and providing for a sale of a one-half interest in the business. It was also alleged that the contract further provided a method set out in the contract by which either one of the parties thereto might acquire the interest of the other partner, in case such other partner should become *incapacitated by illness* to devote substantially all his or her time to the business of the partnership.

It was further alleged that, from June 1, 1935, to November 1, 1940, the parties to the contract carried out and performed the conditions thereof, and divided the proceeds, less expenses, each month. It was also alleged that, on November 1, 1940, Susie E. Frasier suffered a stroke, and by virtue thereof was incapacitated to devote substantially all her time to the business, and that, pursuant to the terms of the contract relating to incapacity and the method by which the other partner might acquire the business and good will of such partner, James B. Heyes accounted each month to Mrs. Frasier for the proceeds of the preceding month, less disbursements, and such course of conduct continued until the death of Susie Frasier on March 28, 1941.

It was also alleged that, subsequent to the execution of the contract, Susie E. Frasier married one Kenner

Keesee, but for the sake of uniformity we shall refer to her as Susie Frasier. It was further alleged that defendants accounted to plaintiff for the proceeds of the business for the month of March, 1941, but have refused to make any accounting subsequent to March 31, 1941.

We then come to paragraph eight of the complaint, which indicates plaintiff's theory. In this paragraph, it was alleged that, according to the terms of the contract, it was provided that, if Susie Frasier became incapacitated to devote all her time to the business, the defendants would pay for her one-half interest in the partnership, one-half the proceeds, less one-half the expenses, each month for a period of one year subsequent to the date Mrs. Frasier became so incapacitated; and that such period would extend to October 31, 1941. Plaintiff asked that defendants be required to account to plaintiff for one-half the net proceeds of the business from April 1, 1941.

Defendants interposed a demurrer to the complaint, which demurrer was sustained by one of the judges of the superior court for King county, on June 30, 1941. Plaintiff thereupon filed an amended complaint.

The basis of plaintiff's claimed rights in the amended complaint is the same contract set out in the original complaint, and the allegations of the amended complaint are much the same as those in the original complaint, except that in paragraph six of the amended complaint it is alleged that, after Mrs. Frasier had become incapacitated by reason of a stroke, defendants commenced to acquire her interest in the manner and form set forth in the contract, accounting to Mrs. Frasier each month for the proceeds of the preceding month, as a part of the purchase price of the property under the conditions of the contract, and that the payment of the purchase price was continued until Mrs. Frasier's death.

In paragraph seven it is alleged that defendants have paid, on account of the purchase price of Mrs. Frasier's interest, one-half the net proceeds of the business, beginning November 1, 1940, and ending March 31, 1941; that, in accordance with the contract, the purchase of the property was to continue for a period of one year from the beginning of the incapacity, which time would expire October 31, 1941; and that plaintiff is entitled to receive the balance of the purchase price of the property, and to have an accounting for each month beginning April 1, 1941, and ending October 31, 1941.

Defendants filed a motion to strike and a demurrer to the amended complaint, which demurrer was sustained by an order filed November 8, 1941. Plaintiff then filed a second amended complaint.

This complaint, like the two preceding ones, was based on the contract in question, and the general allegations are much the same as in the others, except that in paragraph six plaintiff alleges the incapacity of Susie Frasier, by reason of a stroke, and further alleges that it was well known by both Mrs. Frasier and defendant James B. Heyes that the former had become totally incapacitated, and it was further known to both parties that Mrs. Frasier would never again be able to take part in the business in any way, shape, or form; that, beginning November 1, 1940, pursuant to the terms of the contract, defendant James B. Heyes commenced to purchase Mrs. Frasier's one-half interest in the business, and to pay for same in the manner described in the contract.

A motion to strike and a demurrer were interposed to this complaint. The motion was denied and the demurrer overruled.

By their answer, defendants deny that the good will was of value to anyone except Susie Frasier, and allege the contract in question was not a contract upon which

the sale of the business was to be consummated, but was a partnership agreement, including the sale to James B. Heyes of a one-half interest in Mrs. Frasier's chiropody business. Defendants admit that they paid to Mrs. Frasier one-half the net proceeds of the business during the five months of her illness, although defendant James B. Heyes did not have the benefit of her services and was compelled to perform all the professional services during those five months; deny that, beginning November 1, 1940, or at any other time, defendants commenced to purchase Mrs. Frasier's one-half interest, particularly deny that the money paid to Mrs. Frasier during her illness was paid as a part of the purchase price of the one-half interest, and deny that defendants ever, at any time, purchased or began to purchase the remaining one-half interest of Susie Frasier in the partnership; admit that they refused to make an accounting or make any payments to plaintiff, and allege that in defendants' office there is a small amount of equipment belonging to the partnership, which defendants have always been willing, and now stand ready and willing, to deliver to the proper authority, but there has been no demand for same.

It is affirmatively alleged in the answer that the clause in the contract providing for payment to a partner incapacitated by illness, of his or her share of the net proceeds of the business up to a period of one year, was merely intended by the parties as a safeguard against the possibility that one of the partners might be called upon to pay to the other one-half of his or her earnings for a longer period of time, this being a personal partnership based upon professional skill; that it was not the intent of either party to the contract that the clause providing for payment of one-half the net earnings during incapacity from illness should be a

contract for the purchase of the interest of the other party in the event of death.

The evidence in the case is not conflicting. It is admitted that the parties entered into the contract on April 15, 1935, and thereafter continued to perform the services and divide the net proceeds of the business in the manner and according to the terms of the contract. It is admitted that defendant James B. Heyes paid to Mrs. Frasier one thousand dollars at the time of the execution of the contract, and thereafter, long before Mrs. Frasier's illness, defendant paid the additional one thousand dollars, and acquired a half-interest in the business. It is also admitted that defendants paid to Mrs. Frasier one-half the net proceeds of the business during the five months of her illness, and that such payments cover the period to April 1, 1941.

It is admitted that James B. Heyes, since the death of Mrs. Frasier, has occupied the same office occupied by the partnership, that the name of Susie Frasier is still on the office door, and her name is still in the telephone book. It appears from the testimony of Dr. Heyes' office girl that the greater part of the patients who come to the office make appointments by telephone, and that when, during Mrs. Frasier's illness, anyone would call and ask for Mrs. Frasier, such caller was told she was ill, and after her death, callers were informed of that fact.

In regard to the paragraph in the contract relative to one of the partners becoming incapacitated, Dr. Heyes testified that he always understood he would pay while Mrs. Frasier was ill, and nothing more. When asked whether he had any former patients of Mrs. Frasier, Dr. Heyes answered:

"That would be hard to answer because before she died we both worked on some patients. Sometimes she would work on one and next time I would take care of it."

Inez Miller, plaintiff herein, who is a sister of Susie Frasier, testified that Mrs. Frasier began to fail mentally right after Christmas, 1940. She also testified that Dr. Heyes came to see her sister regularly. Counsel for plaintiff admitted that a one-half interest in the partnership was listed and appraised in Susie Frasier's estate at two hundred dollars. Inez Miller also testified that she made out the income tax return for Mrs. Frasier for 1940, and listed the amounts paid by Dr. Heyes in November and December, 1940, as income from the partnership. There is no testimony indicating that either Dr. Heyes or Susie Frasier knew or thought that Mrs. Frasier's illness would result in her death.

The amount of the judgment rendered against defendants is based upon Dr. Heyes' testimony showing that that amount would be one-half the net proceeds of his business from April 1, 1941, to October 31, 1941.

The theory of the trial court, as shown by the memorandum opinion and the findings, was that the paragraph in the contract relating to payments to a partner incapacitated by illness provided a method whereby the partner who was carrying on the business might acquire the one-half interest of the partner so incapacitated, and that when, in November, 1940, after Mrs. Frasier became ill, Dr. Heyes started to make payments to her, he, in fact, under the provisions of the agreement, entered into a contract to purchase Mrs. Frasier's remaining one-half interest; that, in order to purchase such one-half interest, it was obligatory upon him to pay her one-half the net proceeds of the business for one year from the date she was incapacitated; and that, at the time of her death, since he had paid only five months, he was still obligated to pay to her estate for seven months more, or from April 1st to October 31, 1941. This is also plaintiff's theory.

The trial court, in its memorandum opinion, also stated:

"In my opinion, under the undisputed facts, the term 'incapacitated from illness' in the partnership agreement should be construed as including *incapacitated by death.*" (Italics ours.)

We are unable to find any facts in the record which would tend to establish such a construction.

Appellants contend the court erred in construing the partnership agreement to be a contract of sale; in finding that death did not dissolve the partnership; in finding the partnership agreement anticipated and provided for death of one of the parties; in finding that the incapacity referred to in paragraph nine of the agreement included death, as well as illness; in refusing to admit in evidence appellants' exhibit 4; in overruling the challenge to the sufficiency of the evidence, and failing to grant judgment to appellants; in entering judgment in favor of respondent; in denying the motion for new trial; and in denying appellants' motion to strike the second amended complaint and in overruling appellants' demurrer thereto.

In view of the fact that, as we read the record, there is no conflict in the evidence, and in view of the further fact that the judgment is based upon the trial court's construction of the contract, which presents a legal question, we are not bound to give to the findings of the trial court the weight to which they would otherwise be entitled.

It should be kept in mind that this is not an action for conversion of partnership property, or for an accounting of partnership funds or property, but is an action based upon the theory that, under the provisions of the partnership agreement, appellants entered into a contract to purchase the one-half interest of Susie Frasier, for which appellants were obligated to pay one-

half the net proceeds of the business for one year, and having paid for only five months, they are obligated to pay for seven additional months, and that therefore, if there was no such contract entered into by appellants, it must follow that this action fails.

As hereinbefore stated, there is no testimony which indicates that, when Dr. Heyes began to pay to Susie Frasier one-half the net proceeds of the business after she became incapacitated, such payments were intended as payments on the purchase price of her one-half interest. If such was the purpose of the payments made, it must be based upon the following provision of the contract:

"If either party hereto shall for a period of one year be incapacitated from *illness* from devoting substantially all of his or her time to the business of said partnership, the partner so incapacitated shall, notwithstanding such incapacity, receive his or her share of the net profits of such business for such period of incapacity, but, at the end of that period of one year, the entire partnership business including good will and all other assets thereof of every kind and description shall be the property of the partner not so incapacitated, free of any claim whatsoever on the part of the partner so incapacitated, provided that the party of the second part [Dr. Heyes] shall not have the benefit of this paragraph relating to incapacity unless and until he shall have fully paid the sum of $2000.00 to the party of the first part as is hereinafter provided."

It is apparent that the two thousand dollars above referred to was the amount which Dr. Heyes was to pay for the one-half interest in the business he acquired at the time the partnership was formed, which sum was paid by Dr. Heyes long before Mrs. Frasier's illness.

It is undoubtedly true that had Mrs. Frasier's illness continued for a period of one year, and had Dr. Heyes paid to her one-half the proceeds of the business during that time, under the terms of the agreement he would

have acquired the one-half interest of Mrs. Frasier, but, in our opinion, by no stretch of the imagination can it be said that this provision of the contract contemplated that, when one of the partners started to pay to a party incapacitated by illness, the parties thereby entered into a contract whereby the one so paying agreed to purchase the one-half interest of the party so incapacitated, and was obligated to pay to that party, or in case of death, to his or her legal representative, one-half of the net proceeds for one year. Nor can we agree that "incapacitated by illness" should be construed to include *incapacitated by death.*

It seems to us the plain import of the language of this paragraph of the contract is that it was to protect one partner who might be compelled to carry on the business alone, from paying one-half the proceeds of the business to a partner who was so incapacitated by illness as to be unable to give his or her time to the business, for a period longer than one year, and that, if a partner did carry on the business alone for a period of one year, and paid to the partner so incapacitated for one year, one-half the net proceeds for a year, then the partner so carrying on the business should become the owner of the one-half share of the partner so incapacitated.

The agreement does not purport to say, nor in our opinion does it even intimate, that where one of the partners is incapacitated by illness for less than one year, and where the partner not so incapacitated carries on the business and pays to the other one-half the net proceeds of the business, during the time of such incapacity, by so doing the partner carrying on the business should be considered as having contracted to purchase the one-half interest of the partner so incapacitated. In other words, in so far as the provisions of the agreement are concerned, it gives to the surviving

partner or the one carrying on the business no right to claim he has any interest in, or the right to acquire any interest in, the one-half interest of the incapacitated partner, unless he shall have paid to that partner, during his or her illness, one-half the net proceeds of the business for one year.

In this case, Mrs. Frasier died after having been incapacitated for five months, and after appellants had paid to her for that period one-half the net proceeds of the business, and appellants, by such payments, acquired no rights in the one-half interest of Mrs. Frasier. Nor does the agreement give to respondent any right to require appellants to pay to her, for an additional seven months, one-half the net proceeds of the business now being carried on by Dr. Heyes.

The death of Susie Frasier dissolved the partnership (40 Am. Jur. 326, § 285), and thereafter there was no duty on the part of appellants, under the contract, to pay respondent any additional amounts. The only duty resting upon Dr. Heyes after Mrs. Frasier's death was to account to the proper authority for the partnership property in his possession. In so far as the record shows, Dr. Heyes accounted for all the tangible property of the partnership up to the time the partnership was dissolved by Mrs. Frasier's death, and the only remaining property is a small amount of office equipment, for which he has been, and is now, willing to account.

It being apparent that the partnership was a professional one, and appellants having accounted to Mrs. Frasier for one-half the net proceeds up to the time of her death, and the only tangible property left being a small amount of office equipment, respondent has devoted most of her argument to good will, contending that good will has a value, and that good will was what appellants purchased. On page 13 of her

brief, respondent states that good will constituted the greater part of the assets for which Dr. Heyes agreed to pay a certain definite amount, part of which he has not paid.

When the contract is carefully examined, it raises grave doubts as to whether the parties considered the good will of much, if any, value, for it provides that, if the partnership was dissolved within one year, Mrs. Frasier was to repay Dr. Heyes two thousand dollars, or so much of that sum as had been paid by him; if the partnership was dissolved subsequent to one year and prior to two years, Mrs. Frasier was to repay to Dr. Heyes one thousand dollars; and, in the event of a dissolution within two years, Susie Frasier was not to engage in the chiropody business in Seattle until she should have repaid Dr. Heyes the sum of money to which he was entitled under the contract. There is no provision in the contract in any way limiting Dr. Heyes' right to engage in his profession after dissolution of the partnership.

It may be admitted that the good will of a business is a species of personal property, and although inseparable from the business, is an appreciable part of the assets of a concern. *Stanton v. Zercher*, 101 Wash. 383, 172 Pac. 559. However, having concluded that the provisions of the partnership agreement referred to did not contemplate a contract of sale, and that, in fact, no contract was entered into between appellants and Susie Frasier to purchase her one-half interest under the incapacity clause of the contract, it becomes immaterial whether or not, had there been such a sale, good will was a sufficient consideration for the purchase price, or was in fact the thing which appellants agreed to purchase. It likewise becomes immaterial that Dr. Heyes, after Mrs. Frasier's death, left her name on the door of the office.

We conclude, therefore, that the trial court erred in holding that appellants, under the terms of the partnership agreement, had contracted to purchase the one-half remaining interest of Susie Frasier, and in holding that appellants were liable for the balance of the purchase price of such interest, which the trial court determined to be one-half the net proceeds of the business conducted by Dr. Heyes for seven months beginning April 1, 1941, and ending October 31, 1941.

The judgment of the trial court is reversed, with directions to enter a judgment dismissing the action.

SIMPSON, C. J., MILLARD, STEINERT, and MALLERY, JJ., concur.

